IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARCY C. JUNOD )
    Plaintiff, )
)
-vs- ) Civil Action No. 17-1498
)
NANCY A. BERRYHILL,[1] )
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant. )

AMBROSE, Senior District Judge.
.

## OPINION AND ORDER

### Background

Plaintiff Mary C. Junod ("Junod") brings this action pursuant to 42 U.SC. § 405(g) for review of the ALJ's decision denying her claim for a period of disability[2] and disability insurance benefits ("DIB"). She alleges a disability beginning on February 26, 2014. (R. 17). Following a hearing before an ALJ, during which time both Junod and a vocational expert ("VE") testified, the ALJ denied her claim. Junod appealed. Pending are Cross Motions for Summary Judgment. *See* ECF docket nos. [11] and [13].

### Legal Analysis

1. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d

---

[1] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.
[2] The ALJ determined that Junod meets the insured status requirements of the Social Security Act through September 30, 2015. (R. 19).

1

37, 39 (3d Cir. 1989). Substantial evidence has been defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate. *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing* K*ent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986). The

Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P, appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id. A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

    2. <u>The ALJ's Analysis</u>

At step one, the ALJ found that Junod had not engaged in substantial gainful activity since February 26, 2014, the alleged onset date. (R. 19)[3] At step two, the ALJ concluded that Junod has the following severe impairments: history of gastrointestinal disorders including irritable bowel syndrome, history of Crohn's disease, Barrett's

---

[3] The ALJ recognized that Junod earned $145 for the calendar year of 2014 but nothing after that. (R. 19)

3

esophagus, iron deficiency / anemia, depressive disorder, anxiety disorder, and posttraumatic stress disorder. (R. 19)

At step three, the ALJ concluded that Junod does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, Appendix 1. The ALJ consulted Listings relevant to Digestive Disorders, including Listing 5.6 for evaluating Inflammatory Bowel Disease, and those relevant to Mental Disorders, including 12.04 for Affective Disorders and 12.06 for Anxiety-Related Disorders. (R. 20-22)

Prior to engaging in step four, the ALJ assessed Junod's residual functional capacity ("RFC").[4] She found Junod able to perform less than the full range of sedentary work with certain restrictions. (R. 22- 31) At step four, the ALJ determined that Junod was unable to perform past relevant work as a general manager, senior food service handler, and cashier. (R. 31) The prior work exceeded the RFC limitation to the sedentary exertional level and the "mental restrictions in the [RFC] precluded the prior skilled work and the cashier position generally can have frequent public interaction." (R. 31)

Finally, at step five, the ALJ found that, considering Junod's age, education, work experience, and RFC, there are significant numbers of jobs in the national economy that she can perform. (R. 32) For instance, the ALJ explained that Junod would be able to

---

[4] "RFC" refers to the most a claimant can still do despite his / her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his / her limitations. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Additionally, a person's RFC is an administrative finding reserved for the ALJ, not a medical opinion to be rendered by a doctor. 20 C.F.R. §§ 404.1527, 416.927; 20 C.F.R. §§ 404.1546(c), 416.946(c).

4

perform the requirements of representative occupations such as surveillance systems monitor, addressor, and order clerk. (R. 32)

   3. Hypotheticals

In her exchange with the vocational expert, Judge Ehasz queried whether an individual with certain limitations, age, education and work experience who was also off-task 20% of the time would be able to work. (R. 84) The VE responded that such a claimant would not. (R. 84) Junod seizes upon this exchange, urging that the factual underpinnings of the hypothetical are supported both by the Medical Source Statement provided by Chantal Deines, Psy.[5] and her own testimony from the hearing relating to her need to call off work at least once a week, and that the ALJ should have adopted the VE's response to the query. *See* ECF Docket No. 12, p. 8-10.

   Junod's contentions are unconvincing. First, the question before me is not:

   whether substantial evidence supports Plaintiff's claims, or whether there is evidence that is inconsistent with the ALJ's findings…. Substantial evidence could support both Plaintiff's claims and the ALJ's finding because substantial evidence is less than a preponderance. *Jesurum v. Sec'y. of U.S. Dept. of Health & Human Services*, 48 F.3d 114, 117 (3d Cir. 1995) (*citing, Richardson v. Perales*, 402 U.S. 389, 401) (1971)). If substantial evidence supports the ALJ's finding, it does not matter if substantial evidence also supports Plaintiff's claims. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).

*Hundley v. Colvin*, 2016 WL 6647913, *2 (W.D. Pa. Nov. 10, 2016).

   Second, an ALJ is only required to accept the responses that accurately reflect a claimant's impairments. *See Podedworny v. Harris*, 754 F.2d 201, 218 (3d Cir. 1984);

---

[5] Specifically, Junod notes Denies' findings that Junod is moderately impaired with respect to her ability to: understand and remember simple instructions; carry out simple instructions; make judgments on simple work-related decisions; understand and remember complex instructions; carry out complex instructions; make judgments on complex work-related decisions; interact appropriately with the public; interact appropriately with supervisors; and interact appropriate with co-workers; and is markedly impaired with respect to her ability to respond appropriately to usual work situations and to changes in a routine work setting. (R. 288-89)

5

*Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Here, the ALJ gave Denies' report limited weight. (R. 31) Junod has not explained how that finding is in error. The ALJ's conclusion that Denies' report is internally inconsistent, appears to be based solely upon Junod's subjective symptoms, and is at odds with her reported activities of daily living and is supported by substantial evidence of record. Moreover, "the records reflect only minimal and sporadic conservative mental health treatment, for diagnoses of major depressive disorder, anxiety, and PTSD." (R. 29) Further, as the ALJ remarked, "[f]rom an exertional standpoint, no treating or examining medical source has identified any specific functional limitations associated with the claimant's gastrointestinal impairments." (R. 31) Medical records indicate that "[t]he claimant has received routine care, including medication management, from her primary care physician for her intermittent abdominal pain and associated symptoms of diarrhea, constipation and occasionally vomiting and nausea." (R. 29) Improvement was noted with medication and changes in diet. (R. 29) As such, the record reveals substantial evidence that the hypothetical questions the ALJ adopted accurately reflected Junod's impairments. [6]

    4. <u>Reliance Upon DOT</u>

Junod charges that the ALJ erred in finding that the positions of surveillance systems monitor, addressor, and order clerk existed in sufficient numbers in the national

---

[6] Junod also asserts that although the ALJ "gave essentially an accurate analysis and dissertation of the facts and testimony as presented on the issue in Finding and Conclusion No. 5 …, it was a mischaracterization for her to find that Claimant's symptoms were not entirely consistent with the medical evidence and other evidence in the record." *See* ECF Docket No. 12, p. 13. Junod goes on to say that, "it is apparent in the opinion of Claimant and counsel that isolated expressions and isolated analysis of opinion in testimony were being taken out of context" and that, "[w]hen the evidence is read in its entirety without isolated expressions being taken out of the totality of the evidence and read in a fashion consistent with all documentation, it is clear that a fully favorable decision should have been rendered." *Id.*, p. 13-14. Junod's argument is devoid of any citation to the record in support of her contention that the ALJ mischaracterized the record or took anything out of context. The argument is cursory and undeveloped and will be rejected.

economy. *See* ECF Docket No. 12, p. 10-13. Junod reasons that the ALJ's reliance on the vocational expert's ("VE") testimony was improper because the VE relied on job information as found in the Dictionary of Occupational Titles ("DOT") and its companion publication which Junod submits is unreliable and outdated. Junod cites to cases suggesting that the Department of Labor's Occupational Information Network ("O*Net") better serves the goal of determining current job descriptions.

Certainly, there are courts which share Junod's concerns regarding the relevancy of the DOT, which has not been updated in some time. *See Whitmire v. Commissioner of Social Security*, Civ. No., 2014 WL 582781, * 9 (M.D. Pa. Feb. 14, 2014), *citing, Cunningham v. Astrue*, 360 Fed. Appx. 606, 615-16 (6th Cir. 2010) (remanding the case for "consideration of whether the DOT listings … were reliable in light of the economy as it existing at the time of the hearing before the ALJ.") Nevertheless, the "DOT remains an appropriate source of occupational data. Under 20 C.F.R. § 404.1566(d)(1), the Social Security Administration may take administrative notice of job information from the DOT." *Devault v. Astrue*, Civ. No. 2:13-cv-0155, 2014WL 3565972, at *6 (W.D. Pa. July 18, 2014). "Social Security Ruling 00-4P sets forth that the relevant inquiry is whether VE testimony is consistent with the DOT." *Id.* ALJs are directed to identify and explain conflicts between the VE's testimony and the DOT. S.S.R. 00-4P. "Thus, even if the VE's testimony was in conflict with O*NET, … there is no requirement that the VE's testimony comply with that database." *Malfer v. Colvin*, Civ. No. 12-169J, 2013 WL 5375775, at *5(W.D. Pa. Sept. 24, 2013). Consequently, I find that the ALJ properly relied on the VE's testimony to the extent that it was based upon DOT data. *See also, Rush v. Berryhill*, Civ. No. 17-939, 2018 WL 4257930m * 1 n.1 (W.D. Pa. Sept. 6, 2018)

(rejecting claimant's argument that the ALJ erred in relying upon a vocational expert's testimony which, in turn, relied upon the DOT rather than upon newer vocational resources such as O*NET); *Jean-Pierre v. Comm'r. of Soc. Sec.*, Civ. No. 16-5691, 2017 WL 4316880, * 9 (D. N.J. Sept. 27, 2018) (recognizing that other Circuits have expressed concern regarding the source and validity of the statistics set forth in the DOT, but stating that the court "cannot otherwise direct that an ALJ should not consider the DOT and VE testimony when performing the step five analysis, which would be in contravention of SSA regulations."); *Gartland v. Colvin*, Civ. No. 13-2668, 2015 WL 5695311, * 18 (D. N.J. Sept. 28, 2015) (recognizing that the Department of Labor uses the O*Net and stating that "[t]he SSA may wish to reconsider its persistent reliance on the DOT in disability proceedings given that the [O*Net] database is continually updated based on data collection efforts that began in 2001.") (internal quotation marks and citations omitted). Consequently, I reject Junod's assertion that the ALJ's reliance upon the DOT is erroneous.[7]

Consequently, I find no error or basis for remand.

An appropriate order shall follow.

---

[7] Junod insists that the position of surveillance system monitor has been eliminated from the O*Net. As stated above, however, I reject the contention that the O*Net should guide the ALJ's decision. Even assuming that the position of surveillance system monitor has been eliminated, however, Junod's argument is unconvincing. With the removal of the position, Junod urges that work does not exist in the national economy in significant numbers for him. "[T]here is no precise estimate for what constitutes 'significant numbers' of jobs under the Social Security Act." *Young v. Astrue*, 519 Fed. Appx. 769, 772 (3d Cir. 2013). The VE testified to 8,100 jobs in the national economy associated with the position of addresser and 1,300 jobs in the national economy in the position of order clerk. (R. 82-83) Junod has not provided any case law indicating that this number is sufficiently low to show that the Commissioner has not met her burden of identifying a significant number of jobs exist in the national economy. Nor has she identified any evidence indicating that these are isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where he lives. See 20 C.F.R. § 416.966(b). The only cases to which Junod cites, Leonard *v. Heckler*, 582 F. Supp. 389 (M.D. Pa. 1983) and *Alvarez v. Berryhill*, Civ. No. 16-707, 2017 WL 1709400 (M.D. Pa. May 3, 2017), addresses circumstances where the vocational expert identified between 4,000 and 5,000 jobs and 2,077 jobs. Here, the vocational expert has identified jobs which exist in at least twice or four times the amount as in those cases. Given that the number of jobs identified by the ALJ in the present case is nearly double that identified in *Leonard* and *Alvarez*, I do not find Junod's citations to be particularly persuasive.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARCY C. JUNOD,
    Plaintiff,

-vs-                                      Civil Action No. 17-1498

NANCY A. BERRYHILL,[8]
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

AMBROSE, Senior District Judge.

# **ORDER OF COURT**

Therefore, this 5th day of November, 2018, it is hereby ORDERED that the decision of the ALJ is affirmed. It is further ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 11) is DENIED and Defendant's Motion for Summary Judgment (Docket No. 13) is GRANTED.

                                              BY THE COURT:

                                              /s/ Donetta W. Ambrose
                                              Donetta W. Ambrose
                                              United States Senior District Judge

---

[8] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.